**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Juan Jose LOPEZ, Defendant–Appellant.**

No. 00–50594.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 2001

Filed Aug. 6, 2001

Leslie S. Daniels and Angela M. Krueger, Federal Defenders of San Diego Inc., San Diego, California, for the defendant-appellant.

Patrick K. O'Toole, United States Attorney, Blair C. Smith, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: RYMER and RAWLINSON, Circuit Judges, and RESTANI, Judge.*

RYMER, Circuit Judge:

Juan Jose Lopez appeals the imposition of related conditions of supervised release: that he participate in a program of mental health treatment, and that he consent to the release of evaluations and treatment information to the probation officer and the court. The district court imposed these conditions sua sponte, and we must decide whether presentence notice was required by Fed.R.Crim.P. 32 and *Burns v. United States*, 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991). We join other circuits in declining to require notice prior to the imposition of conditions of supervised release of the sort at issue here. As the district court had reason to believe that Lopez was in need of treatment in order to make it in the real world, and disclosure of information about his status was reasonably required for successfully supervising his reentry into society, we affirm.

I

Toward the end of a 63 month sentence for bank robbery, Lopez was transferred on January 14, 2000 from the federal penitentiary in Leavenworth, Kansas, to the Pacific Furlough Facility, a community confinement center, in San Diego, California. He had a projected release date of April 14, 2000, but tested positive for morphine on February 14, 2000. When told that the assistant director wanted to talk to him, Lopez left. He went to work, picked up his tools, and ended his employment. On February 24, he was arrested when he returned to pick up his pay check. Lopez was indicted on one count of escape in violation of 18 U.S.C. § 751(a), and pled guilty.

At the plea hearing, Lopez told the district court that he had not wanted to go to the halfway house, but instead had asked to serve the remaining time in the special housing unit at Leavenworth prison. Lopez found things at the halfway house moved "too fast" and that it was "too wild" for him, in that "everything was all free, there was a lot of movement going around me." Although Lopez did well at his job and tried to cope by talking to older prisoners, he ultimately decided to walk away from the facility. Lopez also told the court that he couldn't seem to break away from his heroin habit in prison or out, and that he would fail on probation.

* The Honorable Jane A. Restani, United States Court of International Trade Judge, sitting by designation.

The Presentence Report detailed Lopez's 25–year criminal history. As it explained, Lopez had been "an outright danger to the community while outside prison walls," had "continued his menacing behaviors" in prison, and had a poor record of adjustment to parole and probation. His sister expressed concern that he had become institutionalized, and told the probation officer that she hoped Lopez could take advantage of counseling or drug rehabilitation as part of his sentence. The PSR recommended a sentence of 21 months so that Lopez could be enrolled in the Bureau of Prisons 500–hour drug treatment program, and recommended that he serve a three-year term of supervised release on condition that he participate in a program of drug or alcohol abuse treatment.

The court sentenced Lopez to 21 months in prison and three years of supervised release. Along with the standard conditions, the court ordered Lopez to participate in a drug and alcohol treatment program, and to be subject to urinalysis testing and counseling. The court further ordered Lopez to participate in a program of mental health treatment and counseling, and to consent to release by the mental health provider to the court and probation office of his psychiatric or psychological treatment and status and condition. Lopez made no comment about participating in a mental health treatment program, but his counsel did ask if the practitioner could provide a status report, not detailed information, to avoid compromising confidentiality. The court responded that it wanted to know about condition and treatment and status, not what Lopez tells the practitioner about himself.

This timely appeal followed.

## II

Lopez contends that he was entitled to notice before sentencing that participation in a mental health program could be imposed as a special condition of supervised release. He maintains that this is required by Rule 32(c)(1) and *Burns*.

Rule 32(c)(1) provides that "[a]t the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence ...". In *Burns*, the Supreme Court held that "before a district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the Government, Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling." 501 U.S. at 138, 111 S.Ct. 2182.[1] Otherwise, the opportunity to comment afforded by Rule 32 would be meaningless because the guidelines "place essentially no limit on the number of potential factors that may warrant a departure" and "no one is in a position to guess when or on what grounds a district court might depart." *Id.* at 136–37, 111 S.Ct. 2182.

Unlike *Burns*, the court here did not *depart from* the guidelines, but rather imposed a condition of supervised release that is *contemplated by* the guidelines. Section § 5D1.3(d)(5) specifically recommends that a special condition of mental health program participation be imposed:

> If the court has reason to believe that the defendant is in need of psychological or psychiatric treatment—a condition requiring that the defendant participate

---

1. *See also United States v. Hernandez,* 251 F.3d 1247 (9th Cir.2001) (notice of upward departure); *United States v. Green,* 105 F.3d 1321 (9th Cir.1997) (notice of a downward departure); *United States v. Starr,* 971 F.2d 357 (9th Cir.1992) (notice of upward departure).

in a mental health program approved by the United States Probation Office.

USSG § 5D1.3(d)(5) (1998); *United States v. Johnson*, 998 F.2d 696, 698 (9th Cir. 1993) (noting that mental health program is a discretionary condition). Thus, a condition requiring participation in a mental health program is a routine (albeit "special") condition of supervised release. As such, it is not outside the guidelines range—or the range of expectations—in the same way that a departure is. In similar circumstances, other courts have declined to extend *Burns, see, e.g., United States v. Brown*, 235 F.3d 2 (1st Cir.2000) ("stay dry" condition); *United States v. Warren*, 186 F.3d 358 (3d Cir.1999) (travel restrictions); *United States v. Mills*, 959 F.2d 516 (5th Cir.1992) (occupational restriction), and so do we.

Lopez urges us to follow cases that have applied *Burns* to the sua sponte imposition of a special condition requiring community notification by a sex offender. *See United States v. Angle*, 234 F.3d 326 (7th Cir. 2000); *United States v. Bartsma*, 198 F.3d 1191 (10th Cir.1999); and *United States v. Coenen*, 135 F.3d 938 (5th Cir.1998). However, without expressing an opinion on the rationale of these cases, sex offender notification is "different, in type and kind, from any of the usual conditions attached to supervised release." *Brown*, 235 F.3d at 4. *Angle, Bartsma* and *Coenen* analogized the registration requirement to an upward departure as registration was not expressly contemplated by the guidelines.[2] The Fifth Circuit in *Coenen* also analogized sex offender registration to an order pursuant to 18 U.S.C. § 3555 requiring a defendant convicted of an offense involving fraud to give notice of his conviction to victims, for which presentence notice is specifically prescribed by 18 U.S.C. § 3553(d).[3] *Coenen*, 135 F.3d at 941–42. By contrast, participating in a mental health program is listed in the guidelines among the discretionary conditions of supervised release to which all defendants are alerted.

Lopez's counsel had an opportunity to comment on this condition, but made no comment on it even though he did raise a question about the requirement for release of information on treatment. He sought no continuance. Accordingly, we decline to extend the notice requirements of *Burns* to the conditions of supervised release imposed in this case.

## III

Lopez argues that even if presentence notice were not required, the court in any event abused its discretion by ordering him to participate in a mental health program in the absence of evidence that he was mentally ill. We disagree.

 A district court has broad discretion to impose supervised release conditions. *United States v. Chinske*, 978 F.2d 557, 559–60 (9th Cir.1992). Our review focuses on "whether the limitation[ ][is] primarily designed to affect the rehabilitation of the probationer or insure the protection of the public." *United States v. Bee*, 162 F.3d 1232, 1234–35 (9th Cir.1998) (quoting *United States v. Consuelo–Gonzalez*, 521 F.2d 259, 265 (9th Cir.1975) (en banc)).

 Section 3583(d) allows a court to impose any condition it considers to be

---

**2.** After the sentencings in each of these cases, the guidelines and 18 U.S.C. § 3583(a) were amended (effective November 26, 1998) to include sex offender registration as a mandatory condition of supervised release.

**3.** Section 3553(d) requires that "[p]rior to imposing an order of notice pursuant to section 3555, the court shall give notice to the defendant and the Government that it is considering imposing such an order."

appropriate so long as the condition is reasonably related to the factors set forth in § 3553, involves no greater deprivation of liberty than reasonably necessary "to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," [4] and is consistent with any pertinent policy statements in the guidelines. *See also* USSG § 5D1.3(b) (implementing § 3553(d)). The pertinent policy statement here is § 5D1.3(d)(5).

The record amply supports the district court's belief that Lopez needed mental health counseling. The court observed Lopez in his appearances and Lopez himself admitted to being unable to adjust to a non-custodial lifestyle. He had escaped from a community confinement center with only a short time left on his sentence because he could not cope, he failed to benefit from previous drug treatment, he demonstrated that he needed help because he had sought advice from more experienced prisoners at the center, he had a history of violent criminal behavior, and both he and his sister recognized that he needed counseling.

Lopez submits that, even so, requiring release of information about his evaluations is inconsistent with the realities of mental health treatment which, he argues, presume an open and confidential exchange. *See Jaffee v. Redmond,* 518 U.S. 1, 10, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) (recognizing psychotherapist privilege and the importance of confidentiality). But this is beside the point of a supervised release condition. The sentencing judge could well conclude that disclosure to the court and to the probation officer of information about Lopez's status was necessary for successfully supervising his reintegra-

tion into society. *See Johnson,* 998 F.2d at 698; *United States v. Cooper,* 171 F.3d 582, 587 (8th Cir.1999) (requiring prisoner to give probation officer full access to psychiatric and medical records "reasonably amplifies" the standard condition of answering probation officer's question truthfully). Lopez's record reflects that he had in the past failed to comply with conditions of release. The court was justifiably concerned about whether Lopez was going to be a danger, or whether he would adjust to the freedom and conditions of supervised release. For these reasons, the court did not abuse its discretion in imposing the related conditions of participation in a mental health program and disclosure of evaluations and treatment information.

AFFIRMED.

4. 18 U.S.C. § 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D).